STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. FM-99-054

ARNOLD BANNER and
NANCY BANNER,

        Plaintiffs

    v.                                            ORDER

JENNIFER BANNER,

        Defendant


    By order dated 2/2/01, the court determined that the plaintiffs' standing to

petition for visitation rights was established. See Order on Motion for Summary

Judgment; 19-A M.R.S.A. § 1803 (1)&(2)(C)-(D)(1998); Rideout v. Riendeau, 2000 ME

198, ¶30, 761 A.2d 291, 302. Hearing in the plaintiffs' petition for grandparents'

visitation was held on November 26-27, 2001. All parties appeared and were

represented by counsel. The guardian ad litem also appeared; his report was

admitted as joint exhibit 1. For the following reasons, the plaintiffs' petition is

denied.

    The plaintiffs Nancy and Arnold Banner are the parents of defendant Jennifer

Banner and the grandparents of Jennifer's son, Justin. The plaintiffs also have a son

Jeremy and a daughter Melora, both of whom are married, have children, and live

in Florida.

    In 1988, Jennifer Banner began studies at Rice University. After she was

sexually assaulted, she left school and returned to her parents' home in Florida.

1

During 1989, she was involuntarily hospitalized twice in Florida. According to Jennifer, her diagnosis was bi-polar depression.

In July 1990, Jennifer married Rick Townsend. The couple stayed in Florida until January 1991, when they went to Pennsylvania to visit Jennifer's grandmother. After Jennifer became pregnant, she voluntarily checked herself into an institution in Pennsylvania. Jennifer was released on 10/2/91 after a hearing attended by Nancy Banner. Jennifer's husband did not appear for that hearing and is no longer part of Jennifer's life.

On 10/10/91, Justin Banner was born. Jennifer, Justin, and the plaintiffs remained living in Florida until the summer of 1992, when they moved to Maine. The plaintiffs bought a house with an in-law apartment, where Jennifer and Justin lived. Jennifer began attending the University of Southern Maine in 1992 on a part-time basis. The plaintiffs, and particularly Nancy Banner, who no longer worked outside the home, cared for Justin while Jennifer attended school and studied. In 1993, Justin began a preschool program and when he was 2 1/2 years old, he attended daycare at the University of Southern Maine four days a week. Jennifer continued her studies at USM on a part-time basis.

In July 1995, Jennifer and Justin moved to an apartment in South Portland. By that time, she had met Will Hamilton, with whom she currently lives. Will stayed with Jennifer and Justin at the South Portland apartment frequently; Will cared for Justin when Jennifer had classes. Justin was still attending preschool in Gorham. In July 1996, Jennifer and Justin moved in with Will in Steep Falls. At age

five, Justin attended kindergarten at the University of Southern Maine.

In the summer or fall of 1999, Jennifer, Will, and Justin moved to Spring Street in Portland, where they lived for more than one year. Justin finished kindergarten at the Reiche School and attended first and second grade in the special education program at Reiche. Jennifer, Will, and Justin lived briefly in the in-law apartment in Gorham with the plaintiffs after they left the Spring Street apartment. The three next moved to Falmouth Street in Portland and Justin began attending the Nathan Clifford School, where he remains. He is currently in the fourth grade.

Beginning in the fall of 1998, the plaintiffs' contact with Justin began to be less frequent. They cared for him for two or three days a week after school and Justin did not spend the night with the plaintiffs after that time. The plaintiffs' contact with Justin has been quite minimal during the last two years. Jennifer terminated the plaintiffs' contact with Justin when she learned of an event that she thought was inappropriate. In June 2001, an interim order was entered by agreement of the parties. Pursuant to the order, the plaintiffs have contact with Justin every other Saturday for six hours.

Jennifer Banner graduated from the University of Southern Maine in 1999 with a degree in chemistry. She is currently employed at Katahdin Analytical as a chemist. Her health currently is good. She has treated with Dr. Maier since 1992 for depression. She currently takes medicine for asthma and for depression; both are under control. She has not been in a hospital since Justin was born. Her medicine has not changed in the last five years. Depression has not affected her ability to

work, to obtain her college degree, or to parent Justin.

Justin has learning and behavioral disabilities. He is distracted easily and has difficulty interacting with his peers. He currently sees Dr. Maier every two or three months. He takes Ritalin during the school week; he does not take this medication on the weekends or during vacations.

The plaintiffs and defendant agreed essentially on their approach to Justin until he was approximately three years old. Everyone agrees that transitions are difficult for Justin, including his return to his mother from visitation with his grandparents. Jennifer noticed that Justin's behavior was not age appropriate after his return from these visits; his behavior was described as "wild and destructive." Justin's behavior in school deteriorated and he had difficulty sleeping.

Based on what Jennifer considers aberrant behavior by her parents, she feels that she does not know them and therefore does not trust them. She does not believe that they respect her role as a mother or that they respect her disciplinary rules when Justin visits his grandparents. In spite of the plaintiffs' agreement to follow Jennifer's rules during Justin's visits, there was no indication that her rules were followed. When Jennifer permitted the plaintiffs to take Justin on vacations to Florida and then to Alaska, there was inadequate phone contact between the defendant and Justin in spite of Jennifer's requests.

After Jennifer ended Justin's visitation with the plaintiffs, she saw increased harmony at her home. She described Justin's behavior after visitation was terminated as "a world of difference." After visitation ended, the teachers told

4

Jennifer that Justin's behavior and performance in school were vastly improved. Although he is not entirely mainstreamed yet in school, he is doing much better.

Since the court order in June 2001, Jennifer has noticed the same difficulties with Justin after his return from visitation. He is much more excitable, he cannot concentrate, and he does things that are clearly against his mother's rules. According to Jennifer, after his return from visitation, the rest of the day is "blown." The visitation occurs on Saturday so that Sunday is available to calm Justin down so that he can attend school on Monday. Sometimes Jennifer and Will are not able to calm Justin down by Sunday evening.

Adjusting for exaggeration and minimalization during the testimony, it is clear that until the summer of 1995, the plaintiffs had substantial contact with Justin and played a significant role, along with Jennifer, in raising him. After Jennifer's move to South Portland, the plaintiffs' contact with Justin diminished. Only during the last several months have the plaintiffs seen Justin for a few hours every other weekend pursuant to the court order.

Over the course of the two-day hearing, the court had the opportunity not only to listen to the testimony of the parties, but to watch their interaction in the courtroom. The relationship among the parties is, to say the least, unfortunate. The defendant was unable even to use the word "parents" when describing the plaintiffs. Jennifer did not look at her mother during her testimony. According to Jennifer, her family has never been close. Her sister suffered from anorexia and bulimia. Jennifer feared her brother to the extent that she placed bureaus in front of her door

when she was home with him. The current litigation has resulted in Jennifer's further estrangement from the members of her family, who apparently support the plaintiffs.

There is no question on this record that Justin loves his grandparents, his mother, and Will. He is excited about visiting his grandparents. Jennifer has concluded, however, that the plaintiffs' influence on Justin is not positive. Although she does not question that they love Justin and he loves them, she believes that love is not enough to justify the effect of the visitation on Justin. She finds Justin happier and more cooperative at home and doing better in school when he has no contact with his grandparents.

The court has considered Jennifer's objections to the plaintiffs' requests for rights of visitation. See 19-A M.R.S.A. § 1803(2)(D) (1998). The court concludes that those objections are valid and are not interposed merely to retaliate against the plaintiffs. She is clearly a thoughtful mother and is doing her best to parent Justin effectively. She has determined that a consistent approach to discipline is fundamental to her plan for Justin and that consistency is lacking during visitation with the plaintiffs. The court concludes that an award of rights of visitation to the plaintiffs would significantly interfere with the defendant's relationship with Justin and her rightful authority over Justin. See id. § 1803(3) (1998).

An assessment of the statutory factors leads the court to conclude further, contrary to the guardian ad litem, that visitation with the plaintiffs would not be in the best interests of Justin. As stated, there is no question that Justin loves his

grandparents and they love him and that there has been, at least up to 1995, significant contact between Justin and his grandparents. See id. § 1803(3)(B). It appears further that Justin would prefer to have contact with his grandparents. See id. § 1803(3)(C). Jennifer Banner is doing well emotionally and physically and Justin's current living arrangements with her and Will are more than adequate and stable and should continue. See id. § 1803(3)(D)-(E). Although the plaintiffs are prepared to give Justin love and affection, it does not appear that they are effectively giving him the guidance his mother gives and desires and which works well. See id. § 1803(3)(F). There is no capacity for the plaintiffs and defendant to cooperate or to learn to cooperate in caring for Justin. The parties had not communicated since 1999. The detailed methods outlined in the interim order and the attachment, presumably designed to facilitate the visitation outlined in the interim order, were not successful.[1] See 19-A M.R.S.A. § 1803(3)(H)-(I). Finally, and perhaps most importantly, since Justin's contact with the plaintiffs has diminished and, at one point, was eliminated, Justin has done very well. See id. § 1803(G). Accordingly, the cessation of contact with the plaintiffs has not had a dramatic or traumatic effect upon Justin's well-being. See Rideout, 2000 ME 198, ¶ 26, 761 A.2d at 301.

The guardian ad litem is correct: a child cannot have too many people to love him. That is not, however, the standard for determining visitation rights of grandparents under the Grandparents Visitation Act. Visitation cannot be granted

---

[1]The defendant admitted that her unwillingness to participate in counseling with Dr. Negron, contrary to the provisions of the interim order, was unfortunate.

to reward the plaintiffs for their very decent and caring treatment of their daughter and her son during Jennifer's time of need. The standard is whether "urgent reasons" exist to permit continued access by the plaintiffs to Justin. See Rideout, 2000 ME 198, ¶ 24, 761 A.2d at 301. On this record, there are no such urgent reasons that would support a limitation on the defendant's right to her care and control of Justin. See id., quoting Merchant v. Bussell, 139 Me. 118, 122, 27 A.2d 816, 818 (1942).

The entry is

The Plaintiffs' Petition for Grandparents' Visitation is DENIED.

Dated: December 5, 2001

Nancy Mills
Justice, Superior Court

8

Date Filed 10-28-99      CUMBERLAND      Docket No. FM99-54

County

Action GRANDPARENT RIGHTS

NANCY BANNER
ARNOLD BANNER

vs.

JENNIFER BANNER

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| KAREN F. WOLF, ESQ<br>PO BOX 4726<br>PORTLAND, ME 04112 | RAY PALLAS, ESQ<br>45 MAIN ST<br>WESTBROOK, ME 04092 |

GAL: Timothy E. Robbins, Esq.
555 Forest Ave., Suite 200
Portland ME 04101

Date of
Entry